Chief Judge Desmond
(concurring). As the Appellate Division dissenting opinion emphasizes, two scenes in this movie ‘ ‘ forthrightly depict the fulfillment of acts of sexual intercourse between the principal characters.” This order if affirmed would be (as I am persuaded after some research) the first court determination in recorded history holding to be nonobscene and constitutionally protected the portrayal on *97 stage or a screen of the very sexual act itself. An affirmance would license the inclusion, in a stage play or a movie (or on television?), of actual scenes of intercourse and of other kinds of behavior always and everywhere considered to constitute indecency when carried on in public. The question presented on this appeal is, therefore, a new one not controlled by any earlier censorship decisions.
Lest we get too far away from the actual question, let us remind ourselves that the Regents did not refuse to license this picture but went no further than to direct the elimination therefrom of the two scenes of sexual congress. If we were to hold that this Regents’ determination was illegal we would be saying that there is a constitutional right to include in a motion picture a direct acting out of coitus. Therefore, what is involved here is not the description in a book of sexual acts but the actual performance of those acts in public. To fornicate in public or to exhibit the sexual organs in public has been considered obscene conduct at least since 1663 in the case of King v. Sedley (1 Keble 620) wherein Sir Charles Sedley was convicted of obscenity because, standing on a London balcony, he exhibited himself in the nude to the populace. The ban on such exhibitions is probably as old as human society and it has never disappeared from our law.
When the Supreme Court held in Times Film Corp. v. Chicago (365 U. S. 43) that pre-exhibition administrative censorship of motion pictures was not necessarily unconstitutional, it was saying that there are still some kinds of movie portrayals that the State’s police power may forbid. Inapplicable to an act of public indecency are the tests used for determining obscenity of a book, that is, predominant ¿ppeal to prurient interest, going substantially beyond customary limits of candor and contemporary community standards, patent offensiveness and the necessity of taking the material as a whole and not condemning it by reason of isolated passages. It is unthinkable that a civilized community would permit actors to simulate sexual acts in a play or movie just because the play or movie is said by some critic or other to be an artistic work. Lewd conduct in public whether on the sidewalk, the stage, or the screen has always been forbidden and controllable by police *98 power statutes (see Commonwealth v. Lambert, 94 Mass. 177, and Penal Law, art. 106). If that is not so there can be presented on Broadway under protection of the law a well-written, well-acted play about a prostitute including' incidents where she is actually working at her trade and the defensive argument would be that these incidents were relevant and indeed essential to the development of a dramatic theme.
Respondent leans on an old and well-worn crutch when it argues that the film must be licensed since it is a “ serious dramatic work ’ ’ and an ‘‘ artistic ’ ’ piece of work, etc., etc. Such is a matter of critical choice, even though to some of us ‘ ‘ A Stranger Knocks ’ ’ looked like a mediocre movie, in no way notable except for the uniqueness of its departures from common decency. But, artistic or not, it contains in the two interdicted sequences, a cold, brazen affront to the accepted public moral code at its lowest possible level. All societal organizations, even civilization itself, depend for permanence on the fixing of a minimal standard of conduct permissible in public. Judges do not have to qualify as dramatic critics before concluding that the loss to society from the cutting of these scenes of fornication is of very little consequence as weighed against the loss to public decency from their exhibition.
Summing it up, we have here the bald question of whether the State of New York has power to require that this movie be not shown unless there are deleted therefrom the two scenes which “ forthrightly depict ” sexual intercourse.
I vote to reverse.